# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOUIS A. STEVENSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-cv-575-JPG-CJP |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM & ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Louis A. Stevenson, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Stevenson applied for disability benefits in July 2013. He initially claimed disability going back to 2008, but later amended his alleged onset date to May 22, 2009. After holding an evidentiary hearing, ALJ Koren Mueller denied the application on May 12, 2016. (Tr. 19-27.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Plaintiff's Arguments

Plaintiff makes the following arguments:

1. Whether the ALJ erred in finding Stevenson had "a limited 8th or 9th grade education" with the ability "to communicate in English";

2. Whether the ALJ erred in providing a boilerplate credibility finding, and in considering sporadic activities of daily living as if they were evidence of the capacity to function in full-time work; and

3. Whether the ALJ erred in failing to consider Stevenson's lack of insurance, and instead finding Stevenson's lack of treatment indicated a lack of severity of Stevenson's conditions.

## **Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[1]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

---

[1] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Mueller followed the five-step analytical framework described above. She

determined that Mr. Stevenson had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2010.[2] She found that plaintiff had severe impairments of small bowel obstruction and osteoarthritis.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the medium exertional level with some physical limitations. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national and regional economies.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

**1.     Agency Forms**

Plaintiff was born in 1956 and was 60 years old on the date of the ALJ's decision. The initial interview was conducted face-to-face; the agency employee indicated that Mr. Stevenson had no difficulty reading, writing, or understanding. (Tr. 213-214.) In the first Disability Report, plaintiff indicated he could read and understand English, and could write more than his name in English. He completed the ninth grade and was not in special education classes. This report says it was completed by plaintiff. (Tr. 216-217.)

Plaintiff submitted a Function Report in August 2013 which had been completed by his ex-wife. He lived with his ex-wife, and she did the cooking and housework. He spent most of his time watching TV because he was in pain. When needed, he cut the grass a little at a time, and

---

[2] The date last insured is relevant only to the claim for DIB.

took out the trash. He said that he could not follow written instructions well because "can not read good." (Tr. 225-232.) Plaintiff's ex-wife completed another form in October 2013 in which she wrote "Education 9th grade. I'm Literacy. I can not read, write, or spell good." (Tr. 248.)

Mr. Stevenson worked as a journeyman carpenter from 1993 to 2008. (Tr. 240.)

**2.      Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in February 2016. (Tr. 35.)

Plaintiff testified that he dropped out of school in the ninth grade. He was not in special education. The ALJ asked him how well he could read, write and do simple math. Plaintiff replied, "I can just do a little bit. Not very much. You know usually if I got something that I really need somebody [to] read, I have her [his ex-wife] read it to me." He was "not really good" at writing. He could not "really spell real good or anything. (Tr. 39-41.)

Mr. Stevenson testified that he was unable to work because he runs out of breath, his back hurts if he sits too long, and his stomach "is always irritating [him]." (Tr. 42.)

Plaintiff had worked as a journeyman carpenter out of a union hall. (Tr. 41.) He did carpenter framing work for several different construction companies. He also had some periods of self-employment when he did home remodeling. He had flyers that he handed out, and people would call him and he would bid the job. He reported that income and paid taxes on it. (Tr. 58-60.) When he was working for himself, he did siding and whatever else the remodeling job entailed. (Tr. 62.)

Plaintiff had gotten a medical card from the state about two years prior to the hearing. (Tr.

43.)

Plaintiff was still living with his ex-wife. (Tr. 38.) The ALJ asked him what he did around the house. He answered:

> You know every once in a while I run the vacuum sweeper and stuff like that you know and that kind is you know help out on my part you know. And every once in a while I do the dishes even though I get yelled at for doing them because I don't do them right.

(Tr. 46.)

The ALJ asked plaintiff about his hobbies. He answered:

> Usually I just tinker around out in the garage sometimes you know. I got a little garage. Sometimes I just kind of tinker around with stuff out there until I get tired and then I just come in. You know some nights I, I got like an old truck that I'm trying to just fix up. You know whenever I get a couple dollars I'll go out there [and] tinker with it you know. Little stuff you know.

(Tr. 47.)

A vocational expert (VE) also testified. He classified plaintiff's past work as carpenter, DOT 860.381-022. That job is at the medium exertional level and is SVP 7. (Tr. 63.)

The ALJ asked the VE a hypothetical question which corresponded to the ultimate RFC findings, that is, a person who was able to do medium exertion work, limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no hazards such as unprotected heights or moving mechanical parts. The VE testified that this person could not do plaintiff's past work, but he could do other jobs such as hospital cleaner, bartender helper, and grocery bagger. These jobs are all unskilled and SVP 2. (Tr. 64-65.)

3. **Medical Records**

The medical records reflect periodic complaints of abdominal pain and treatment for three bowel obstructions. In May 2009, he had a small bowel obstruction which resolved in one or two

days after treatment with antibiotics and bowel rest. (Tr. 372-374). He was seen for abdominal pain in January 2012, but a CT scan showed no bowel obstruction. (Tr. 360). In September 2014, he was hospitalized for two days with another small bowel obstruction that resolved with conservative treatment. (Tr. 416-420.) In January 2016, he was hospitalized for five days with another small bowel obstruction that resolved with conservative treatment. His recurrent bowel obstructions were thought to be related to adhesions. He had a history of surgical removal of the spleen and had surgical changes at the upper abdomen. He also had a history of a ruptured bowel, status post repair. (Tr. 585-594.)

The medical records also reflect some complaints of low back pain. In August 2013, plaintiff's primary care provider noted no problems on musculoskeletal exam, finding normal range of motion and no pain on inspection. (Tr. 295.) However, a CT of the abdomen was done in October 2013 because of complains of swelling and pain on the right side extending into the groin. This study incidentally showed degenerative changes in the lumbar spine. (Tr. 411-412.) Plaintiff complained of low back pain in June 2015. X-rays showed degenerative osteoarthritic changes of the lumbar spine with no compression fracture. His primary care physician prescribed Norco. (Tr. 482, 517-518.) The next month, plaintiff told his doctor that his back pain was better. When he saw the doctor again in August, there was no mention of back pain. (Tr. 512-514.)

When plaintiff was evaluated in the hospital in January 2016 for abdominal pain, musculoskeletal exam showed a normal range of motion with no tenderness. (Tr. 596.)

## Analysis

Mr. Stevenson first argues that the ALJ should have found that he is illiterate even though
Page **7** of **10**

he went to school until the ninth grade and was not in special education classes. He maintains that he cannot perform the jobs identified by the VE because they require reading ability that is beyond his capability.

This argument fails for several reasons. First, Mr. Stevenson never testified that he was illiterate. The ALJ asked him an open-ended question about how well he could read, write, and do simple math. If he actually is illiterate, he could have said so. Second, two of the jobs identified by the VE, bartender helper and grocery bagger, require the lowest "language level" classified by the DOT:

> Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

DOT, 1991 WL 672701, 1991 WL 687964. Plaintiff's testimony at the hearing supports a finding that he could meet these requirements. Furthermore, he erroneously suggests that the disability report stating that he could read and understand English and could write more than his name in English was not completed by him. The report clearly states that it was completed by the "person who is applying for disability." (Tr. 217.) Most importantly, plaintiff ignores the fact that he worked for years as a journeyman carpenter. "Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education." 20 C.F.R. § 404.1564(a). The DOT specifies that the job of carpenter requires language level 3:

> Language: Level 3 - READING: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

>WRITING: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.

DOT, 1991 WL 681972.

Plaintiff next argues that the ALJ improperly equated his limited daily activities with an ability to work full time. The ALJ cited to SSR 16-3p, which supersedes the previous SSR on assessing a claimant's credibility. She did not use the boilerplate language criticized by the Seventh Circuit in the cases cited by plaintiff.

SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2016 WL 1119029, at *1. SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529, including a claimant's daily activities.

The Seventh Circuit has cautioned against equating the ability to engage in limited daily activities with an ability to work. *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). This does not mean, as plaintiff seems to think, that the ALJ was prohibited from remarking on his activities.

ALJ Mueller did not equate plaintiff's daily activities with an ability to work. Rather, she noted that plaintiff told health care providers that he did things like yard work, cleaning the garage, painting trim, washing the car, cleaning the house, and taking out the trash. She also noted his testimony about tinkering around on an old truck. (Tr. 25.) The ALJ did not err in considering these activities along with the other factors listed in § 404.1529.

Lastly, plaintiff faults the ALJ for remarking on the relative lack of medical treatment, arguing that he did not have insurance. However, plaintiff testified that he had gotten a state

medical card about two years prior to the hearing. Even though he had insurance during that time, he was not undergoing regular treatment for bowl obstruction or back pain.

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). ALJ Mueller's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Mueller committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Louis A. Stevenson's application for disability benefits is **AFFIRMED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: MARCH 1, 2018**

s/ *J. Phil Gilbert*
J. PHIL GILBERT
DISTRICT JUDGE